## Diller *versus* Burger.

1. Burger having erected a brewery, built an addition to it; Diller furnished machinery for both buildings and filed a mechanics' lien within six months after the last item was furnished to the second. The court left it to the jury to say whether the additional building was a continuance of the first, whether it was all one act and the original building and the addition were one building; if so, the lien was filed in time. *Held*, to be correct.

2. The second section of the Act of April 14th 1855 (Mechanics' Liens), applies to items for work done or materials furnished continuously to the same building.

3. It is intended to link together the items of an account where there was no contract for the whole, or no order which would embrace the whole within a single undertaking.

4. Nelson *v.* Campbell, 4 Casey 156, distinguished.

May 3d 1871.   Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. .

Error to the Court of Common Pleas of *Lancaster county :* No. 65, to May Term 1871.

The proceedings in the court below were upon a mechanic's lien, filed by William Diller against John Adam Burger, for machinery, &c., furnished for a brewery and an addition thereto.

The real estate against which the lien was entered having been sold by the sheriff, under a fieri facias issued upon a judgment held by Jacob K. Shenk, and the money arising from the sale, not sufficient to satisfy both debts, paid into court, the court upon petition of Shenk awarded an issue as if upon a scire facias upon the mechanic's lien to try the following facts in dispute :—

1. Whether the materials furnished and work done referred to in said lien were furnished and done within six months after the building was finished ?

2. When the said brewery was commenced and when finished ?

3. When the machinery for said brewery was furnished ?

Shenk's judgment under which the property was sold, was entered August 31st 1866 ; Diller's lien was filed March 4th 1869.

Burger testified that he began building the brewery in March 1866 and finished it in March 1867 ; and that he commenced building the addition in May 1868 and finished it in October 1868 ; that this was not part of his original plan but was made necessary by imperfections in the arrangement of the first building ; that machinery was moved from the old building into the new building, the motive power being furnished by means of shafting connected with machinery in the old building ; that there was but one set of machinery for both buildings.

All the machinery was furnished and put up by Diller, who offered evidence to show that the work upon the machinery was done continuously from the spring of 1866 until October 1868.

The plaintiff submitted the following points :—

1. If the jury find that the erection of the brewery was com-

[Diller *v.* Burger.]

menced before the judgment of Jacob K. Shenk was entered of record; and if the plaintiff, William Diller, filed his lien within six months after he had finished the work or furnished the material, constituting his mechanic's lien claim, then the plaintiff is entitled to recover, and the verdict must be for the plaintiff.

2. If the jury find by the evidence, that Mr. Diller or his hands, worked continuously, in the ordinary progress of the work, in the making and putting up of the machinery, from the time such work was commenced by him, whether on the brewery ground, or at plaintiff's shop, at Lancaster, and filed his claim within six months after the last item of the work was done or materials furnished, he, the plaintiff, has a valid lien, dating from the beginning of the erection of the brewery, and has priority to Jacob R. Shenk's judgment, and the verdict must be for the plaintiff.

3. Taking promissory notes, &c., and payments made on account, will not destroy plaintiff's lien.

The 1st and 3d points were affirmed: to the 2d the court (Long, P. J.) answered:—

"If the jury should consider the two buildings as constituting one, and both buildings were originally designed and intended to be one building when the first building was erected, then we answer this point in the affirmative. But if the second building was erected after the first building was erected, and was a building not designed to be erected when the first building was erected, and the lien was not filed within six months from the completion of the first building, then we answer this point in the negative;" and charged:—

"The claim of William Diller, the plaintiff, is not disputed, it is honest and meritorious.

"[As the case is presented the question is not whether this claim ought or ought not to be paid, but whether or not it ought to be paid by Jacob K. Shenk, and this depends upon certain facts constituting the issue you are trying.]

"The claim is maintained in this action by virtue of an asserted mechanic's lien, it having been filed as such on the 4th of March 1869, for materials furnished and work done to a certain brewery of John Adam Burger, the defendant. Liens are a privilege enjoyed by certain creditors for security of their claims by holding the property to which they are attached to be answerable for such claims, and are, if justly founded, due to a principle which regards them as means of advancing the public good. In a community where trade and commerce and all business enterprises depend upon a system of credit to induce those who have capital to advance it to persons of enterprise and activity, who have not capital to extend their business, and make valuable improvements, the security which the liens of mortgages give is the most persuasive argument. These liens are unquestionably the strongest

18 P. F. SMITH—28

[Diller *v.* Burger.]

motive for such investments, and justify the policy which gives
the lien-creditor his preference. It can be no other ground on
which the mechanic's lien can rest for its justification. The erec-
tion of dwelling-houses and other edifices, is essential to the
improvement and progressive wealth of the country. Many enter-
prising men who have the disposition and energy to make improve-
ments, have not the means, and were it not for the system of credit,
would be unable to accomplish their designs, and although they
may not be able to obtain by loan the means, yet in consequence
of the security afforded by the mechanic's lien to mechanics,
laborers and .those who supply materials for building, they can
erect their buildings and complete their improvements. The legis-
lature, in contemplation of the public good and general welfare
resulting from such improvements, has from time to time granted
the privilege to those who thus contribute their labor, skill and
property, to secure their claims by making them, when duly filed
of record, liens upon the buildings erected by their means. It is
only on such considerations, that the law regards liens with any
degree of complacency, for they are a privilege and being confined
to a particular class of creditors, and thus establishing a prefer-
ence over other creditors whose claims are equally honest, would
be iniquitous, were it not for the reasons of public policy which
we have explained. But for this distinction, why should the man
who supplies lumber to the owners of the building be preferred to
the butcher or baker, who supplies him with his daily bread? It
is said these laws should receive a liberal construction. So they
should, so far as may be necessary and proper to give to mechanics
and material-men all the advantages the law intended. But there
are certain things required in order to entitle them to the lien
provided, and these things must be done. There are also condi-
tions and limitations of time which must be complied with. These
liens are statutory grants, and must be made matters of record,
for the law looks with great suspicion upon any claim or lien which
is not of record; secret or constructive liens are regarded with
disfavor. This case comes before the jury by reason of an order
of court, directing an issue to ascertain some facts which were
disputed, on an application for distributing a certain sum of money
paid into court by the sheriff, as the proceeds of a sale made by
him on an execution issued by Jacob K. Shenk against John A.
Burger.

"[Jacob K. Shenk had sold J. A. Burger some five or six acres
of land, on the Conestoga river, near Millersville, on which Bur-
ger proposed to erect a brewery for manufacturing lager beer.
This was in 1866. In the spring of that year, he commenced the
erection of the brewery, on the 27th of March, and finished it on
the 25th of March 1867.] It was finished with a vault underneath,
and with the apparatus and appliances, sufficient to manufacture

[Diller *v.* Burger.]

the beer, which he began to manufacture by hand, and continued throughout the year 1866 and the following year to manufacture in that way, making two thousand barrels during the two years. [In the mean time it was discovered that' the warm water used above had penetrated through the floor into the vault beneath, affecting the temperature, consequently spoiling the beer, so that in the fall of 1868, he began to build a new and additional brewery to the end of the first, and constructed with a separate and distinct vault underneath, and after it was finished removed the mash tub or kettle into it from their former position in the old brewery, using the latter only for the machinery intended to operate by water-power.   This new brewery was completed in December 1868.]   An execution being issued on Jacob K. Shenk's judgment, the premises including the said land and improvements, were sold and the money brought into court for distribution. Here arose a dispute, as before mentioned, in relation to some material facts, and Jacob K. Shenk applied for an issue to ascertain those facts by the finding of a jury, which issue was accordingly directed, and which you are now trying, as under a scire facias by William Diller *v.* John A. Burger, on his mechanic's lien for the materials furnished, and work done, in the erection of the buildings upon the premises.   The facts are, when and how the materials were furnished, the work done and the buildings were commenced and completed.   The truth of these facts you are to determine according to the evidence.

["These buildings were erected from time to time.  The first was the brewery, then followed the additional or new brewery, &c.   John A. Burger says he is a carpenter, and erected the buildings with the assistance of others, whom he employed.   They were not built at the same time.

"The Act of 1855, in the second section, protects the claim for work done and materials furnished continuously towards the erection of any new building when the items of the bill are in any part bonâ fide within six months before the filing of the claim therefor.   But it does not aid the plaintiff in his assertion of a lien on the first brewery, if the fact was that an interval of nearly a year and a half took place between the erection of that and the second or additional brewery.   The character and nature of the erection of the second brewery, as an enlargement or additional building, is a distinct fact, and not changeable in respect to the various kinds of work done or material furnished.   It cannot be regarded as a new building with respect to a carpenter or lumber merchant, and is identical with and inseparable from the first building with respect to a machinist furnishing machinery.]

"Now under the testimony adduced in this case, the question which arises and which is for your adjudication and determination is, what was the character of the first building which was erected,

[Diller *v.* Burger.]

and which has been designated as the first brewery, the building of which, according to the testimony of Mr. Burger, was commenced on the 27th of March 1866, and finished on the 25th of March 1867. Now if you should be of the opinion, from the evidence (and let me here remind you that you are the exclusive judges of the facts or of the evidence), that the building was completed and finished on the 25th March 1867, then the plaintiff's claim would not be a lien on that house, because it was not filed, as the law requires, within six months of the completion, it being only filed on 4th March 1869. But supposing that its completion only has reference to the time when the machinery was finished and placed, that, according to the testimony, was in February 1868. If you believe from the testimony that to be the fact, the lien would still be entered too late. [But it is contended on behalf of the plaintiff that the additional or new building added was but a continuance of the first building, and that the work done and machinery furnished for the new building, which was completed in the latter part of the year 1868, was but a continuation of the work of furnishing the machinery, that all was a continued act, that the original building and addition was but one building. If this be so, and that when the first building was erected it was designed and intended that the additional building was to be part of it, and the erection to be simultaneously or in a reasonable time after the erection of the first building, then the plaintiff was in time in filing his claim.] The witnesses of the plaintiff say that they consider the work done and machinery furnished was, as they conceived, a continuous act. On the other side we are told that when the first brewery, as it has been called, was finished, that completed that building, and that any work or machinery furnished for the second building did not attach to the first building. If the first building was completed, as contended by J. K. Shenk, and no machinery furnished or work done for that building within six months after the filing of the lien, then his views are correct; this we say is the law. [Mr. Burger in his testimony states positively that when he commenced the building his design was only to put up one building, and acted accordingly, and that when it was up he considered it completed, and intended to use it as a brewery, but after using it for some time, in consequence of the heated water which was necessary to be used in the first story passing through the floor into the cellar, and increasing the temperature of the air below, which was injurious to the lager beer, and then after the building was thus completed he came to the conclusion of erecting another building, in order to obviate the difficulty which he did not appear to apprehend before. According to his testimony the first building was to stand alone, and if this be a correct version of the facts in dispute, the claim of plaintiff would not be a lien which would take

[Diller *v.* Burger.]

precedence of Mr. Shenk's judgment, which, under these circumstances, if you believe them to be correct, was a lien which took effect before the plaintiff's claim was filed, for if the additional building was a new and independent building, the judgment was entered before that building was commenced.]

"I would again in conclusion say, the facts are for your determination, but it is your duty to apply the law as explained to you by the court."

The verdict was for the defendant.

The plaintiff took a writ of error, and assigned for error the answer to the 2d point, and the parts of the charge in brackets.

*W. R. Wilson,* for plaintiff in error, cited Harman *v.* Cummings, 7 Wright 322; Lightfoot *v.* Krug, 11 Casey 348; Nelson *v.* Campbell, 4 Id. 156; Holden *v.* Winslow, 6 Harris 160; Bartlett *v.* Kingan, 7 Id. 341; Irish *v.* Harvey, 8 Wright 76; Purdon 713; Singerly *v.* Doerr, 12 P. F. Smith 9; Ralston *v.* Groff, 5 Id. 276; Brown *v.* Parkinson, 6 Id. 336.

*A. H. Smith,* for defendant in error, cited Norris's Appeal, 6 Casey 122; Catawissa Railroad *v.* Armstrong, 2 P. F. Smith 282; Phipps *v.* Boyd, 4 Id. 342; Wilson *v.* Forder, 6 Casey 132; Singerly *v.* Doerr, *supra;* Noll *v.* Swineford, 6 Barr 191.

The opinion of the court was delivered, May 25th 1871, by

AGNEW, J.—We discover no unfairness in the submission of this case to the jury by the learned judge in the court below. He carefully informed the jury that they were to determine the facts, and informed them what facts were to be determined by them. It is true in narrating the case in order to present to their minds the questions involved, he spoke of the new building and the old one, the time when one was finished and the other begun. But in doing this he only used the language of the witnesses and followed the evidence. The facts of the case are perfectly clear. Burger built a brewery and finished it in March 1867, coinciding with the book of the plaintiff, which shows that in the latter part of March the work on the marsh rake and the malt-mill was lumped and charged without date. His next entry was on the 29th of November 1867. The new brewery was then determined upon, and Burger testifies it was no part of the first plan to erect it. The reason for erecting the second brewery was, that the first was built over the vault, and the hot water used in it ran down into the vault, raising the temperature and spoiling the beer. The claim filed described them as two buildings; one 40 feet in length and 28 feet in width, and the *addition,* as it is termed, 33 feet long by 24 feet wide. There is no pretence that the second

building formed any part of the plan originally, or was even contemplated when the first was put up and finished. Indeed the evidence makes it clear that it was begotten by a necessity unknown to John A. Burger when he conceived his plan and built the first brewery. We therefore can discover nothing in the charge of the judge which looks like unfairness in stating the facts.

Nor do we discover any error in the rule given to the jury. He left it fairly to the jury to say whether the additional building was but a continuance of the first, and whether the work done and machinery furnished for it was but a continuation of the work and finishing of machinery—whether it was all one continued act, and the original building and the addition were but one building; and if so, instructed them that the plaintiff's lien was filed in time. It is evident that the plaintiff's idea of the unity of these two buildings rests on the connection between the machinery in them. Part of the machinery in the old brewery had been removed into the new, and new machinery made and adapted to the change, and the machinery between the two buildings connected by shafting. The whole being made and put in and adapted by himself, the plaintiff thinks of it as one continuous work, and claims the price of the whole. But his work does not give legal unity to the two buildings. The erection of the second building was a new undertaking, the result of an entire change of plan, and had no connection with the original scheme. The adaptation of the machinery to run them together did not give character to the second building so as to make it a continuous erection with the first. The fact that the addition was a new building, the result of a new plan and a new undertaking, still remained. It is evident that the stonemasons and the carpenters who worked upon the second building could have no lien on the old brewery. Their work did not concern it, and was not done on the faith of it as a security. Now it is clear that the distinctness between the two erections which would cut off them from the old brewery would cut off the plaintiff also. As a question of lien the plaintiff's first work has no connection with the second. It was not in pursuance of a single contract. When begun on the first brewery it was not contemplated to be carried into the second. It is therefore not helped out by the fact that but a short interval intervened, that he made the whole machinery, or by the operation of the 2d section of the Act of 14th April 1855, Brightly 713, pl. 35. That act applies to items for work done or materials furnished continuously to the same building, and was intended to link together the items of an account for work or materials where there was no contract for the whole, or no order which would embrace the whole within a single undertaking. The answer of the court to the plaintiff's 2d point was therefore a

[Diller *v.* Burger.]

correct statement of the law as applied to the facts of the case. This case is governed by the principles stated in Norris's Appeal, 6 Casey 122, Miller *v.* Hershey, 9 P. F. Smith 64, and Armstrong *v.* Ware, 8 Harris 519, and is totally unlike Nelson *v.* Campbell, 4 Casey 156. The last case is very peculiar, and the decision was affected by the evident design of the owner to incorporate the several additions with the original building, and to make one of the whole; and also by the necessity of the ground on which they stood for a common use as a single building. It can scarcely become a precedent for another case.

The judgment is affirmed.